CLARENCE SMOOT

*v.*

GRACE DINGESS

*Sheriff*, LOGAN COUNTY

(No. 13717)

Decided July 12, 1977.

*James M. Cagle* for plaintiff in error.

*Charles T. Bailey* for defendant in error.

NEELY, JUSTICE:

This is an appeal from the denial of a writ of habeas corpus in the Circuit Court of Logan County by J. Ned Grubb sitting by designation as special judge. Clarence Smoot, the appellant here and petitioner below challenged his incarceration in the Logan County Jail for civil contempt because of his failure to pay alimony to his wife.

Petitioner was convicted of contempt by Special Judge John Esposito, who presided over this domestic relations case by stipulation entered into by counsel for the parties in 1972. It appears that the petitioner had been delinquent for some time in payment of alimony and on May 13, 1975, Special Judge John Esposito entered an order to show cause why petitioner should not be held in contempt. Thereafter on May 30, 1975, the petitioner appeared before Judge Esposito who summarily incarcerated him in the Logan County Jail. However, upon

reflection, Judge Esposito released the petitioner the following day and caused the jailer to advise petitioner to appear in court again on June 5, 1975. On that date further proceedings were conducted and the matter continued to June 12, 1975, at which time the petitioner was again adjudged in contempt of court and committed to the Logan County Jail for a period of six months or until such time as he paid his arrearages in alimony.

On this habeas corpus appeal we are concerned with four questions: First, was the defendant adequately advised of his right to counsel and did he have an opportunity to obtain counsel before the hearings; second, did the court behave improperly because none of the witnesses at the contempt hearing was placed under oath, and no transcript of the hearing was made which would permit appellate review; third, was the denial of the writ of habeas corpus improper in light of the verified petition by the petitioner and the lack of a return by the sheriff; and, fourth, were all the proceedings void because the special judge was under thirty years of age at the time the order was entered.

I

We find that the petitioner was not indigent, knew of his right to be represented by counsel, and had a fair opportunity to procure counsel for the hearings. Regardless of whether a contempt proceeding is civil or criminal, a defendant has the right to be represented by counsel, and if he is indigent counsel must be appointed to represent him. *Eastern Associated Coal Corp. v. Doe,* ____ W. Va. ____, 220 S.E.2d 672 (1975). However, in this case, petitioner did not make reasonable efforts to secure counsel and did not represent to the court either at the original contempt hearing or at the habeas corpus hearing that he had been indigent at any time during these proceedings and he demonstrated that at all times he had been fully aware of his right to counsel.

II

The question of the absence of both sworn witnesses and a transcript provides adequate reason for reversing

the lower court and discharging the petitioner. Rudimentary notions of due process indicate that a person cannot be incarcerated upon unsworn testimony, and that in any hearing before a judge for the purpose of committing an individual to jail, the decision of the judge in that regard must be founded upon competent evidence. While we recognize that as a practical matter all of the parties to the original contempt proceedings knew the circumstances concerning the payment of alimony, there was no competent evidence adduced under oath at the hearing upon which the special judge could render his decision. Furthermore, whenever a person is committed to jail and suffers the loss of his liberty, he must have an opportunity to appeal the proceeding by which he was convicted. An effective appeal can only be prosecuted upon an adequate transcript and, accordingly, we hold that whenever a person faces a possible loss of his liberty, except for contempt committed in the presence of the court, a court reporter must be available and a stenographic record of the proceedings made. Regardless of whether the contempt is civil or criminal, the jail is the same, and if an individual is indigent and unable to afford the cost of a transcript for appeal, it is the obligation of the State to provide him with one.[1] An adequate record of the proceeding is one of the fundamental rights of due process. Even in civil proceedings where liberty is not at stake, but where a substantial interest is placed in jeopardy, we have required a transcript for appeal. *North v. West Virginia Board of Regents*, ___ W. Va. ___, 233 S.E.2d 411 (1977). Likewise, we have required full verbatim transcripts in mental

---

[1] An indigent's right to be furnished a transcript of contempt proceedings where he faces loss of his liberty is a logical extension of an indigent's right to counsel in contempt proceedings, established in *Eastern Associated Coal Corp. v. Doe*, ___ W. Va. ___, 220 S.E.2d 672 (1975). If counsel for an indigent defendant is to play a meaningful role in the proceedings, as *Eastern Associated Coal* contemplates, he will be careful to make a proper record for appeal. The record is of no value, however, unless it is made available to the indigent who lacks the means to pay for it himself. In this respect, *see also Call v. McKenzie*, ___ W. Va. ___, 220 S.E.2d 665 (1975).

562

health commitment proceedings. Syllabus point 8, *State ex rel. Hawks v. Lazaro,* ____ W. Va. ____, 202 S.E.2d 109 (1974).

### III

The petitioner argues that his writ below should have been granted because the sheriff failed to make a proper return to justify the sheriff's continued custody of petitioner. Petitioner argues that petitioner's verified petition was uncontroverted and that the absence of a responsive pleading in the form of a return gave the judge no disputed issues of fact on which to hold the hearing. We agree that the sheriff should have filed a return and that *W. Va. Code,* 53-4-7, (1923) contemplates that in habeas corpus proceedings the person having custody of petitioner's body should make a return setting forth sufficient facts to justify continued detention of the party seeking release. *See State ex rel. Vizziri v. Lowe,* 103 W. Va. 266, 137 S.E. 10 (1927) and *State ex rel. Neider v. Reuff,* 29 W. Va. 751, 2 S.E. 801 (1887). However, we also recognize that the real party in interest in this case was not the State, but rather a private individual who had caused petitioner to be incarcerated in vindication of her individual, private rights.

The record discloses that petitioner's former wife was not given formal notice of the habeas corpus hearing, although the special judge did direct petitioner's counsel to inform Mrs. Smoot's counsel of the hearing informally. Under these circumstances, while a formal return is required of or on behalf of the custodian of the petitioner's body, when it appears to the judge that a reasonable opportunity to be heard has not been afforded to the real party in interest, the judge may order that notice be given formally to the real party in interest, and a continuance granted for a reasonable time for the purpose of permitting a return to be drafted and filed, unless the requirement of a return is waived on the record or waived by conduct of all parties by trying the issues as if a return had been filed.

## IV

Finally, the petitioner challenges the validity of the original order of incarceration because the Special Judge, John Esposito, was under thirty years of age at the time that he acted as special judge and could not, therefore, enter any valid order. We hold that the special judge's being under thirty makes all of his orders void, since *West Virginia Constitution*, Art. IV, § 4, provides that: "[J]udges must have attained the age of thirty," ... a requirement that is jurisdictional. The appellee argues that orders of Special Judge Esposito are valid, despite his being under the proper age because Mr. Esposito was a *de facto* judge, disabled for a reason unknown at the time to any of the parties, who acted under color of lawful authority pursuant to the parties' stipulation. For authority, appellee cites *Tower v. Whip*, 53 W. Va. 158, 44 S.E. 179 (1903), and *State ex rel. Matko v. Ziegler*, 154 W. Va. 872, 179 S.E.2d 735 (1971). We overrule *Tower v. Whip*, and so much of *Matko v. Ziegler* as implies that a judge who lacks the qualifications mandated by the *West Virginia Constitution* for regular judges may acquire legitimacy for his orders by virtue of being a *de facto* judge.

The Court is of the opinion that judges should have a special place in the universe of governmental officials, and that the orders of a special judge who has not met the constitutional prerequisites for holding that office are invalid.[2] Consequently, we hold that all orders en-

---

[2] Our opinion in this respect is solidly grounded in West Virginia precedent. The rule that we follow is well stated in the case of *State ex rel. Black v. Pennybacker*, 144 W. Va. 612, 110 S.E.2d 265 (1959), which reviewed the authorities and concluded, at 618:

"The rule fairly deducible from the foregoing decisions is that where a case is heard by a special judge in the trial court, an objection to his election or selection made for the first time in this Court will not be considered, unless it appears affirmatively from the record that such election or selection was illegal, provided, that under the Constitution and laws of this State he could have been lawfully elected or selected. In the absence of such affirmative showing from the record, it will be presumed

tered by Special Judge John Esposito while he was under the constitutionally required age of thirty years, are void and of no force or effect.

For the foregoing reasons the judgment of the Circuit Court of Logan County is reversed and the case is remanded to that court with directions to discharge the petitioner forthwith from custody.

*Reversed and remanded.*

MILLER, JUSTICE, *concurring:*

While I concur in the result, I diverge from the majority on the due process rights that should have been accorded the petitioner.

In *North v. West Virginia Board of Regents,* ___ W. Va. ___, 233 S.E.2d 411 (1977), this Court held that where substantial property or liberty rights are at stake, the following due process standards would apply:

> "[A] formal written notice of charges; sufficient opportunity to prepare to rebut the charges; opportunity to have retained counsel at any hearings on the charges, to confront his accusers, and to present evidence on his own behalf; an unbi-

---

that the statutory requirements were followed, and that he was lawfully elected or selected. On the other hand, where it appears affirmatively from the record that the special judge was not legally elected or selected, the question, being jurisdictional, may be raised for the first time in this Court."
As is evident, the presumption of regularity referred to above does not attach here, since we are concerned with a special judge's failure to satisfy constitutional, not statutory, requirements for holding office. Accordingly, we must consider this case in the first instance, and decide it as we have, because, even though no objection was made to Special Judge Esposito's selection, he does not satisfy the provisio in the above-stated rule that he be lawfully elected or selected under the *Constitution* of this State.

In such cases as this one, where a special judge is not lawfully selected, he has no authority or jurisdiction, and his proceedings are void. *See, State v. Boles,* 148 W. Va. 13, 132 S.E.2d 634 (1963); *Brinkley v. Brinkley,* 147 W. Va. 557, 129 S.E.2d 436 (1963); *State ex rel. Black, v. Pennybacker, supra;* and *State v. Cross,* 44 W. Va. 315, 29 S.E. 527 (1898).

ased hearing tribunal; and an adequate record of the proceedings." [233 S.E.2d at 417]

A six-month jail sentence is a substantial restraint on a person's liberty.

I disagree with the factual conclusion that petitioner made no reasonable effort to secure counsel. His testimony was uncontradicted that after learning that his counsel could not attend the initial hearing, he contacted every law firm in Logan, but was refused their counsel for a variety of reasons. He appears to have fallen into that wonderous category where his income was just enough to make him ineligible for appointed or legal aid counsel, but too little to allow him to secure retained counsel. The matter was a disagreeable domestic case that most attorneys undoubtedly would prefer to avoid, but a court cannot, for this reason, act on contempt without having made counsel available.

I take further issue with the statement that a transcript is not necessary for contempt committed in the presence of the court. This remark has no bearing on the case at hand, since there was no act of contempt directed at the court and done in its presence. The statement is totally ambiguous since it does not delineate between the act of contempt and the summary proceeding that may follow to punish such contempt. *State ex rel. Arnold v. Conley*, 151 W. Va. 584, 153 S.E.2d 681 (1966), and *State ex rel. Browning v. Jarrell*, ___ W. Va. ___, 192 S.E.2d 493 (1972), touch on some aspects of this type of proceeding.

Undoubtedly, the due process requirements will differ where the act of contempt occurs in the courtroom, since there is an immediate need to preserve orderly judicial procedure. Even in this setting a record can and should be made. The United States Supreme Court has considered various aspects of this particular type of contempt. *Codispoti v. Pennsylvania*, 418 U.S. 506, 41 L. Ed. 2d 912, 94 S. Ct. 2687 (1974); *Taylor v. Hayes*, 418 U.S. 488, 41 L. Ed. 2d 897, 94 S. Ct. 2697 (1974); *Mayberry v. Pennsylvania*, 400 U.S. 455, 27 L. Ed. 2d 532, 91 S. Ct. 499 (1971).

Again, I would emphasize that the present case does not pertain to this type of direct contempt against the court.

Finally, I am delighted that the court is moderating the undiscriminating doctrine espoused in *Eastern Associated Coal Corp. v. Doe*, ____ W. Va. ____, 220 S.E.2d 672 (1975), in regard to the right to attack jurisdiction. The uniform and long established rule in contempt has been that where the court lacks jurisdiction over the subject matter or the parties, or is without power or authority to render the particular order, its contempt order may be attacked on this basis either directly or collaterally. Where the underlying order on which the contempt is based is merely erroneous, irregular or improvidently awarded, it generally can be attacked only by an appeal. Annot., 12 A.L.R.2d 1059, 1067 (1950); 17 Am. Jur. 2d *Contempt* § 42; 17 C.J.S. *Contempt* §64.

In the present case the trial court judge, because of his constitutional age infirmity, had no power to enter the underlying order, and habeas corpus would lie to attack its validity. *State ex rel. Browning v. Jarrell, supra;* and *Ex Parte Mylius*, 61 W. Va. 405, 56 S.E. 602 (1907). We have also recognized that a prohibition will lie where the court acts in contempt without or beyond its authority. *White v. County Court of Roane County*, 99 W. Va. 504, 129 S.E. 401 (1925); *Powhatan Coal & Coke Co. v. Ritz*, 60 W. Va. 395, 56 S.E. 257 (1906).

I am authorized to state that Justice McGraw joins with me in this concurring opinion.